FILED
COURT OF APPEALS
DIVISION II

2013 DEC 31  AM 9: 17

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43559-4-II |
| Respondent, | |
| v. | |
| AARON LLOYD RAYGOR, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Aaron Lloyd Raygor appeals his exceptional sentence and his jury trial convictions for residential burglary and second degree identity theft. He argues that his trial counsel provided ineffective assistance in failing to object to admitting into evidence a deputy sheriff's "opinion on guilt"[1] testimony that occurred when the deputy identified Raygor in surveillance photographs. In a statement of additional grounds for review[2] (SAG), Raygor asserts that (1) the trial court violated his "speedy" trial rights, (2) the evidence is insufficient to prove the residential burglary charge, (3) the prosecutor engaged in prosecutorial misconduct, (4) the trial court miscalculated his offender scores, (5) the trial court relied on improper evidence in

---

[1] Br. of Appellant at 7 (capitalization altered).

[2] RAP 10.10.

denying his Drug Offender Sentencing Alternative[3] (DOSA) request and in imposing the exceptional sentence, and (6) his exceptional sentence was improper because the facts do not support the aggravator. We affirm.

FACTS

I. BURGLARIES AND IDENTITY THEFT

On May 2, 2011, someone broke into Julia and Gary Mullan's home through the attached garage, ransacked the home, and took several items. Investigators found no fingerprints, but on several items they found patterns consistent with those items having been touched by someone wearing gloves. Around noon the next day, Aaron Lloyd Raygor attempted to buy merchandise at a local Target store with Gary Mullan's credit card. The store's video surveillance system recorded this attempted transaction.

At about 4:00 PM on May 3, Hayward L. Brandon was home when he heard an alarm coming from Sandy Bicheray's house across the street, looked out his upstairs window, observed a man run from the home's front door toward the driver's side of a white Cadillac parked in the driveway, and called 911 with a description of the vehicle and its direction of travel as it "sped" away.[4] 1 Verbatim Report of Proceedings (VRP) at 136. Brandon flagged down the arriving deputies, gave them a description of the vehicle, and described the man he had seen leaving the

---

[3] RCW 9.94A.660(1).

[4] Brandon did not, however, see what side of the car the man entered, and he was unable to see the car's license plate number as it drove away.

2

house. When home owner Bicheray returned home, she discovered that an engraved jewelry box and its contents were missing.

Soon after Brandon's description of the white Cadillac was broadcast, deputies stopped a white Cadillac in the area. Raygor was driving the Cadillac, David Turner was in the front passenger seat, and a woman was in the back seat. There was loose jewelry on the passenger's seat and a screw driver "tucked beside the driver's seat." 1 VRP at 39. Raygor and the other man were wearing expensive watches, tennis bracelets, and several rings, which the deputies photographed, removed from the men, and packaged.[5]

Deputies brought Brandon to the site to see if he could identify the man he had seen running from Bicheray's house. Because Brandon had not had a clear view of the man's face, Brandon identified Raygor only by his clothing, a "black, dark color, polo type shirt." 1 VRP at 138.

The deputies impounded the Cadillac and obtained search warrants for it. During the searches, the deputies found (1) Bicheray's jewelry box and several pieces of her jewelry; (2) several rubber gloves; (3) the Mullans' daughter's camera; (4) a nylon bag containing Gary Mullan's tools; (5) a piece of paper with Gary Mullan's name, birth date, and social security

---

[5] One of the bracelets was later identified by another burglary victim, Don Olmstead, as having been stolen from his home.

number written on it; (6) two "lock punches"[6]; (7) several items taken from the Olmstead home; and (8) several other items belonging to Turner and to the woman who had been in the Cadillac.[7]

Pierce County Sheriff's Deputy Anthony Filing was investigating the Bicheray burglary. When Filing learned about the credit card incident at Target, he obtained copies of the surveillance video and still photos from the video related to the Target incident and identified Raygor in those images.

## II. PROCEDURE

The State charged Raygor with the residential burglary of Bicheray's home and Gary Mullan's identity theft.[8]

### A. Trial

The State presented testimony from Pierce County Deputy Sheriffs Filing, William Ruder, and William Donald Foster; forensic investigator Robert Scott Creek; Brandon; Bicheray; Gary Mullan; Julia Mullan; and Dillon Tiger, an asset protection manager from Target.[9] These witnesses testified as described above.

Explaining how he connected the identity theft to the white Cadillac, Filing also testified:

I obtained the photos from Target of the suspect attempting to use a stolen credit card from another burglary. *I recognized the suspect entering the store and*

---

[6] 1 VRP at 198.

[7] The deputies did not find anything belonging to Raygor.

[8] The State also charged Raygor with the Olmstead residential burglary and another attempted residential burglary. The jury found Raygor not guilty of the Olmstead burglary charge, and the trial court dismissed the attempted residential burglary charge during trial.

[9] The State also presented evidence related to other burglaries not relevant to this appeal.

*leaving the store and attempting to use the card as Mr. Raygor.* Furthermore, I saw Target was able to obtain surveillance *of Mr. Raygor* walking out into the parking lot and getting into the same white Cadillac I served the search warrant on.

1 VRP at 103 (emphasis added). Raygor did not object.

Brandon also denied having told the deputies that the man he had seen running from Bicheray's house was a light-skinned black male; he asserted that he had told the deputies that the man was a light-skinned male wearing a black polo-type shirt. The parties later entered a stipulation

[t]hat on May 3, 2011 at approximately 1608 hours, Pierce County Sheriff's Deputy William Foster recorded in his incident report that Mr. Hayward Lee Brandon told him that, "He then saw a light skin black male run form the house and jumped to the car."

Clerk's Papers at 36. Brandon identified the man depicted in a photograph taken contemporaneously with his field identification as the man he had seen running from Bicheray's house. Exhibit 42 was a photograph of Turner, who had been in the Cadillac's front passenger seat when the deputies stopped the vehicle on May 3.

Gary Mullan testified that (1) he believed his stolen credit card had been in an old wallet that he had left on a work bench in his garage, and (2) he had not been aware that the credit card was missing until he was notified on May 3 that someone had attempted to use it.

Target asset protection manager Dillon Tiger testified about Raygor's attempt to use Gary Mullan's credit card. Tiger testified that at approximately noon on May 3, he noticed a man in a red jacket in the store. Because the coat seemed unnecessary for the weather, Tiger watched the man from the security office. The man eventually attempted to purchase "some food items and . . . a Target gift card" with a credit card, which was denied. 1 VRP at 221. Tiger approached the

man, took the credit card, looked at the name on the card, and returned the card to the man. The man then went outside to a white car, contacted another man, returned with Gary Mullan's credit card, and attempted to complete the transaction. After that transaction was also denied, the man left the store with the card. In court, Tiger identified Raygor as the man who had attempted to use Gary Mullan's credit card.

Security cameras recorded Raygor's attempted Target transactions and his activities in the parking lot. The jury viewed the security tapes and several still-shots showing the man in the red jacket.

Turner was the sole defense witness. He testified that (1) he was responsible for the Bicheray burglary; (2) he owned the white Cadillac; (3) he had asked Raygor to drive on May 3 because he (Turner) did not have a license and did not want to be pulled over with stolen property in his car; (4) he could not remember when he had picked up Raygor that day; (5) although he asked Raygor to drive on May 3, Raygor did not know about his (Turner's) plan to burglarize Bicheray's home; (6) he was unsure whether Raygor could have heard the Bicheray's burglar alarm going off; and (7) when the deputies later pulled them over, Raygor looked surprised and had stopped, despite Turner's encouraging him to keep driving. Turner also testified that he did not "recall . . . going to Target with [Raygor]" on May 3. 2 VRP at 260. When the State showed him the Target security tapes and photographs, Turner admitted that he was the driver shown in those images. But he denied knowing who the man in the red coat was because he could not see the man's face.

The jury found Raygor guilty of the residential burglary of Bicheray's home and second degree identity theft.

6

B. Sentencing

Raygor's criminal history included 12 prior felony convictions, one of which was a 1996 first degree burglary juvenile adjudication. Raygor requested a prison-based DOSA sentence. The State argued against a DOSA sentence and asked for an exceptional 108-month sentence for the residential burglary based on Raygor's high offender score and multiple current convictions.[10]

The trial court denied Raygor's DOSA request, followed the State's sentencing recommendation, and imposed a 108-month exceptional sentence for the residential burglary conviction and a concurrent 54-month standard range sentence for the identity theft conviction. Raygor appeals.

ANALYSIS

I. EFFECTIVE ASSISTANCE OF COUNSEL

Raygor argues that his trial counsel provided ineffective assistance in failing to object to Filing's testimony identifying Raygor in the Target surveillance tape and still photographs. Raygor contends that (1) this testimony was improper opinion testimony because it was the jury's responsibility, not Filing's, to determine whether he was the person in the surveillance evidence; and (2) this error was prejudicial. Even assuming, but not deciding, that defense counsel should have objected to this testimony, we hold Raygor fails to establish prejudice and, thus, his ineffective assistance argument fails.

A. Standard of Review

---

[10] The State also mentioned Raygor's 1996 first degree burglary juvenile adjudication and other burglaries that the State did not charge. The trial court sustained Raygor's objection.

To establish ineffective assistance of counsel, Raygor must show both that (1) his counsel's performance was deficient, and (2) this deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Prejudice occurs when, but for the deficient performance, there is a reasonable probability that the outcome would have differed. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). We begin our analysis with a strong presumption that counsel was effective. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (citing *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Moreover, "[o]nly in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989), *review denied*, 113 Wn.2d 1002 (1989). We address only the prejudice prong of the test here.

### B. No Prejudice

"Generally, no witness may offer testimony in the form of an opinion regarding the guilt or veracity of the defendant; such testimony is unfairly prejudicial to the defendant 'because it "invad[es] the exclusive province of the [jury]." *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (alterations in original).[11] But here, Filing was not the only witness to identify Raygor as the person who had attempted to use Gary Mullan's credit card at Target. Target's loss prevention officer, Tiger, identified Raygor in court based on his personal observations of

---

[11] Quoting *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993), *review denied*, 123 Wn.2d 1011 (1994); *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). *See also State v. George*, 150 Wn. App. 110, 118, 206 P.3d 697, *review denied*, 166 Wn.2d 1037 (2009).

Raygor while he had been in the store; Tiger also verified that this same person was the person depicted in the surveillance evidence.[12] Thus, Filing's testimony identifying Raygor in the surveillance tape and photographs was merely cumulative.[13]

Moreover, although the surveillance video and some of the photographs did not clearly show the Target customer's face, at least two of the still photographs were clear enough to allow the jury (1) to evaluate for themselves whether the person in the photographs was in fact Raygor and (2) to disagree with Filing's conclusion that Raygor was the individual in the surveillance video or photographs. Accordingly, we hold that Raygor has not shown that the outcome of the trial would have differed had Filing not identified Raygor in the videos or photographs. Because Raygor fails to establish prejudice, his ineffective assistance of counsel argument fails.

## II. SAG ISSUES

In his SAG, Raygor asserts that (1) the trial court violated his "speedy trial" rights, (2) the evidence is insufficient to prove the residential burglary charge, (3) the prosecutor engaged in prosecutorial misconduct, (4) the trial court miscalculated his offender scores, (5) the trial court

---

[12] Raygor does not challenge Tiger's identification testimony. Furthermore, a lay witness's opinion testimony about the identity of a person in a surveillance photograph is appropriate "when the witness has had sufficient contacts with the person," which was the case here. *George*, 150 Wn. App. at 118 (citing *United States v. LaPierre*, 998 F.2d 1460, 1465 (9th Cir. 1993)).

[13] Filing's identifying Raygor did not amount to opinion of *guilt* testimony. A witness may give "opinion" testimony about the *identity* of a person in a surveillance photograph: Courts have analyzed this type of identification testimony under ER 701, which addresses admissible opinion testimony by lay witnesses (rather than characterizing such testimony as opinion of guilt). *See George*, 150 Wn. App. at 118; *State v. Hardy*, 76 Wn. App. 188, 190-91, 884 P.2d 8 (1994), *affirmed sub nom. State v. Clark*, 129 Wn.2d 211, 916 P.2d 384 (1996).

relied on improper evidence in denying his DOSA request and in imposing the exceptional sentence, and (6) his exceptional sentence was improper because the facts do not support the aggravator.

## A. Time for Trial[14]

Raygor asserts that his "speedy trial" rights were violated because he objected to every trial continuance; but he fails to identify any specific continuance that was improper. Although an appellant's SAG need not contain references to the record or to the law, we are not obligated to search the record in support of SAG claims; thus, we will not address an issue if it "does not inform the court of the nature and occurrence of the alleged errors." RAP 10.10(c). Furthermore, there is no information in the record related to any continuance; and on direct appeal we cannot consider matters outside the record. *McFarland*, 127 Wn.2d at 335. Because Raygor has not adequately identified the nature and occurrence of this alleged trial error, we decline to consider it further.

## B. Evidence

Citing Turner's testimony that Raygor did not know about the Bicheray burglary, Raygor appears to assert that there was insufficient evidence to support the jury's finding him guilty of this residential burglary as an accomplice because the evidence was insufficient to prove his knowledge of Turner's plan and activities. We disagree.

When reviewing a challenge to the sufficiency of the evidence, we ask whether, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have

---

[14] We treat Raygor's "speedy trial" claims as time for trial claims under CrR 3.3.

found the essential elements of the crime beyond a reasonable doubt." *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). "All reasonable inferences must be drawn in favor of the State and interpreted most strongly against the defendant." *Hosier*, 157 Wn.2d at 8. Circumstantial evidence and direct evidence are equally reliable. *State v. Moles*, 130 Wn. App. 461, 465, 123 P.3d 132, *review denied*, 157 Wn.2d 1019 (2005). We defer to the jury on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

The record includes ample evidence of Raygor's knowledge. Although Turner testified that Raygor did not know about his (Turner's) plans burglarize the Bicheray home, the jury obviously rejected this testimony and instead relied on other testimony showing Raygor's knowledge to reach its verdict.[15] Taken in the light most favorable to the State, the evidence was sufficient to allow a jury to find that Raygor knew about the burglary and that he assisted Turner by acting as the driver: Raygor was waiting in the car while Turner burglarized the Bicheray house and willingly drove away with Turner in the car after seeing Turner run from the house carrying Bicheray's jewelry box while the house's alarm was sounding loudly enough that a neighbor across the street heard it.

As to Raygor's role as Turner's accomplice, the evidence was also sufficient to show that (1) Raygor acted in a way that assisted Turner; and (2) Raygor was not merely present at the scene with knowledge that Turner was going to commit a crime—Raygor "sped" away with

---

[15] Again, we defer to the jury on credibility issues. *Thomas*, 150 Wn.2d at 874-75.

Turner in the car, despite the many indications that Turner had just burglarized the home. 1 VRP at 136. Accordingly, this insufficiency of evidence issue also lacks merit.

### C. Prosecutorial Misconduct

Raygor further asserts that the prosecutor presented a "twisted a web of lies that he made seem true in his final jury speech," which allowed the jury to find him guilty despite there being no evidence supporting accomplice liability. SAG (Additional Ground 4) Arguably, this is a prosecutorial misconduct claim. But Raygor does not point to any specific evidence or argument to support his assertion. His general allegation does adequately identify the nature and occurrence of this alleged error so that we can review it. RAP 10.10(c). Accordingly, we decline to consider this prosecutorial misconduct issue further.

### D. Sentencing

Raygor also challenges his offender scores that the trial court used, asserting that they should have been lower. His offender scores were 13 points for the second degree identity theft and 14 points for the residential burglary. He had 12 prior felony offenses (including the juvenile first degree burglary adjudication) and 1 other current offense. Because Raygor's second degree identity theft is a non-violent class C felony,[16] each of his prior adult felonies and his other current offense counted as 1 point, and his juvenile first degree burglary adjudication counted as 1 point because it was a violent felony.[17] Thus, his 13-point offender score for the second degree identity theft was correct. RCW 9.94A.525(7). And because under RCW

---

[16] RCW 9.35.020(3); 9.94A.030(33), (54).

[17] RCW 9.94A.030(54)(a)(1).

9.94A.525(16) his prior first degree burglary adjudication counted as 2 points for the residential burglary offender score, his 14-pont offender score for the residential burglary was also correct.

Raygor next asserts that the trial court improperly relied on his more-than-10-years-old juvenile first degree burglary adjudication as grounds for imposing the exceptional sentence and denying his DOSA request, apparently based on ER 609(b). SAG (Issue 1). But ER 609(b) is an evidentiary rule that addresses admission of prior convictions for impeachment purposes during the evidentiary phase of trial; it does not govern what convictions or adjudications a trial court may consider at sentencing. Instead, RCW 9.94A.525(2)(g) provides that both adult and juvenile prior offenses are part of a defendant's offender score and criminal history for sentencing purposes. Accordingly, this claim lacks merit.

Raygor also appears to assert that the facts do not support the exceptional sentence under RCW 9.94A.535(2)(c), which allows the court to impose an exceptional sentence if it finds that "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." Raygor contends, "I have one burg. in my juvenile past and none as an adult. Where it the multiple?" SAG (Issue 3). Raygor misconstrues this statute, which merely requires "multiple *current* offenses." RCW 9.94A.535(2)(c) (emphasis added). Because Raygor was convicted of two current offenses—burglary and identity theft—he was convicted of "multiple" current offenses. Thus, this

No. 43559-4-II

assertion also lacks merit.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Penoyar, J.

14