FILED
COURT OF APPEALS
DIVISION II

2014 APR -8 AM 8: 54

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43853-4-II |
| Respondent, | |
| v. | |
| ANTHONY M. SUMAIT, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. – Anthony M. Sumait appeals his jury trial conviction for second degree assault. He argues that (1) the evidence was insufficient to prove second degree assault because it showed only his mere presence at the scene, and (2) a side-bar held off the record violated his right to a public trial. We affirm.

## FACTS

Two men approached Charles Burnett outside the home he shared with his girlfriend, Jennifer Minkler, asked about a vehicle he had for sale, and then asked him for a cigarette or "a light." Verbatim Report of Proceedings (VRP) (July 31, 2012) at 67. Burnett told the men to come back the next day, and they hit him with wooden "clubs." VRP (July 31, 2012) at 57. Burnett shot one of the men, Daniel Holcomb; the other ran away. The police found Holcomb alive on the ground and a wooden stick with a metal cap nearby. The stick later tested positive for Burnett's and Holcomb's DNA (deoxyribonucleic acid).

About a quarter of a mile from Burnett's residence, officers found the other man who had run away, Anthony Sumait. Sumait told one officer that (1) he and Holcomb had approached Burnett to ask about a truck; (2) he (Sumait) had asked Burnett for a cigarette; and (3) Burnett

had then reached into his pocket, pulled out a gun, and started shooting. Sumait asserted that no one had assaulted Burnett.

The State charged Sumait with second degree assault of Burnett with a deadly weapon, RCW 9A.36.021(1)(c), as either a principal or an accomplice. Before calling its first witness, the State asked the trial court for a side-bar conference; Sumait did not object.[1] The State's witnesses testified as described above. In addition, Minkler testified (1) that both men had struck Burnett "numerous times"[2] with wooden clubs; and (2) that a group of four men had been at her residence that night, two of whom had remained on the other side of the residence and had not been involved in the assault or the shooting.[3] Sumait presented no evidence. The jury convicted him of second degree assault.

Sumait appeals his conviction.

## ANALYSIS

### I. SUFFICIENT EVIDENCE

Sumait first argues that the evidence (1) was insufficient to prove that he was involved in the assault because there was no evidence that he was the person who actually struck Burnett or that he was an accomplice to the person who did strike Burnett, and (2) established only his presence at the scene. We disagree.

---

[1] This side-bar was not reported, and the record on appeal does not show what the side-bar concerned.

[2] VRP (July 31, 2012) at 62.

[3] Because it was dark when the assault occurred, neither Minkler nor Burnett could identify the assailants.

No. 43853-4-II

When reviewing a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). We must draw all reasonable inferences in favor of the State, "interpreted most strongly against the defendant." *Hosier*, 157 Wn.2d at 8. "Circumstantial evidence and direct evidence are equally reliable." *State v. Moles*, 130 Wn. App. 461, 465, 123 P.3d 132 (2005). We defer to the jury on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).[4]

Sumait argues that this case is similar to *State v. Asaeli*, in which we held that the State had failed to establish more than the mere presence of a defendant whose second degree felony murder conviction we reversed. *See* Br. of Appellant (citing *State v. Asaeli*, 150 Wn. App. 543, 569-70, 208 P.3d 1136, *review denied*, 167 Wn.2d 1001 (2009)). This argument fails: There was no evidence that Asaeli had been involved in the murder in his case; here, in contrast, Minkler testified that *both* men who had approached Burnett had been active participants in assaulting him. And Sumait admitted that he had been one of the two men who had approached Burnett.

Taken in the light most favorable to the State, evidence established that (1) two men approached Burnett, ostensibly to ask him about a vehicle he had for sale, and asked Burnett for a cigarette or for "a light"; (2) Burnett told them to come back later; (3) the two men then struck

---

[4] *Abrogated in part on other grounds, Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

3

Burnett "numerous" times with wooden "clubs"; and (4) Sumait was one of the two men who had approached Burnett and asked for a cigarette. VRP (July 31, 2012) 67, 62, 57. Although Minkler testified about two men in addition to the two who had assaulted Burnett, she made clear that (1) these other two men did not approach Burnett, and (2) both of the men who approached Burnett assaulted him. We hold that this evidence was sufficient to establish that Sumait was directly involved in the assault of Burnett and to support the jury's verdict.

## II. PUBLIC TRIAL

Sumait next argues that the side-bar conference violated his right to a public trial. We cannot reach the merits of this argument.

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). To determine whether a public trial violation has occurred, we must examine the alleged closure under the "experience and logic" test.[5] *Sublett*, 176 Wn.2d at 72-73. The first prong of this test is the "experience" prong, which requires us to examine "whether the core values of the public trial right are implicated." *Sublett*, 176 Wn.2d at 73. The second prong of the test is the "logic" prong, which requires us to determine "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.

---

[5] Although only four justices signed the lead opinion in *Sublett*, Justice Stephens's concurrence created a majority who adopted the "experience and logic" test. 176 Wn.2d at 136 (Stephens, J., concurring). More recently, a unanimous Supreme Court cited *Sublett* in applying the "experience and logic" test in *In re Personal Restraint of Yates*, 177 Wn.2d 1, 28-29, 296 P.3d 872 (2013).

No. 43853-4-II

Ct. 2735, 92 L. Ed. 2d 1 (1986)). In order to apply this test, we must be able to determine from the record before us on appeal the nature of the alleged closure. Here, the record shows only that there was a side-bar at the State's request; the record reflects no information about the content of this side-bar conference. Because our review is limited to the record on appeal, we cannot determine whether this side-bar conference implicated Sumait's public trial rights; therefore, we do not further consider this issue.[6]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Melnick, J.

---

[6] The proper procedure for raising issues dependent on matters outside the record is by way of a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).