# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56199-9-II |
| Respondent, | |
| v. | |
| DANIEL ALLEN DUNLAP, | UNPUBLISHED OPINION |
| Appellant. | |

LEE. J. — Daniel A. Dunlap appeals his convictions and sentence for communication with a minor for immoral purposes and fourth degree assault with sexual motivation. Dunlap argues that the evidence was insufficient to support his conviction for communication with a minor for immoral purposes, the trial court violated double jeopardy by entering convictions for both communication with a minor for immoral purposes and fourth degree assault with sexual motivation, and the trial court erred by imposing certain legal financial obligations (LFOs).

We hold that the evidence was sufficient to support the conviction for communication with a minor for immoral purposes. We also hold that the trial court violated double jeopardy by entering convictions for both communication with a minor for immoral purposes and fourth degree assault with sexual motivation, and the trial court erred by imposing certain LFOs. Accordingly, we affirm Dunlap's conviction for communication with a minor for immoral purposes, reverse Dunlap's conviction for fourth degree assault with sexual motivation, and remand for the trial court to vacate the fourth degree assault with sexual motivation charge and resentence Dunlap consistent with this opinion.

No. 56199-9-II

FACTS

Dunlap, a 39-year-old man, attended a party with three other adults and three children. Dunlap spent multiple hours in a hot tub with the three children and provided beer and vodka to them. Throughout the party, Dunlap made several remarks about and to 12-year-old O.A.[1,2]

O.A. told an adult at the party that Dunlap had touched her leg close to her private part. The adult confronted Dunlap and called the police.

The State charged Dunlap with communication with a minor for immoral purposes, fourth degree assault with sexual motivation, and furnishing liquor to minors. The charge for communication with a minor for immoral purposes was a felony charge because Dunlap had previously been convicted of other felony sex offenses.

Dunlap waived his right to a jury trial and elected a bench trial. At trial, all three children and two adults testified about the events at the party. Law enforcement officers testified regarding their response and investigation. Dunlap's community custody officer testified that Dunlap had previous convictions for first degree child molestation and second degree child molestation. Dunlap did not testify. The testimony from the people at the party provided the following relevant facts.

---

[1] We use initials to protect the minors' identities. *See* Gen. Order 2011-1 of Division II, *In re Use of Initials or Pseudonyms for Child Witnesses in Sex Crime Cases* (Wash. Ct. App Aug. 23, 2011), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2011-1&div=II.

[2] The trial court's findings of fact state that O.A. was thirteen years old on the date of the incident. However, O.A. and her mother testified about O.A.'s date of birth, which would make O.A. twelve years old on the date of the incident.

2

Ashleigh Davis hosted a small party at her home.  O.A. went to the party with her friend M.L. and M.L.'s mother Danielle Kertzman.  Kertzman was friends with Davis.  Davis' boyfriend also attended the party, as did Davis' son, B.D.  The children were all around the ages of eleven to thirteen years old on the date of the party.  O.A. was twelve years old.

O.A. and M.L. borrowed swimsuits from Davis to use the pool and hot tub in the backyard. When O.A. jumped in the pool, the straps to her swimsuit top got undone.  O.A. felt embarrassed about this incident and tied the swimsuit top back on.

The children also used the hot tub.  Dunlap spent an hour or two in the hot tub with the children.  While in the hot tub, Dunlap told O.A. and B.D. that they would be cute together and tried to get them to kiss.  Dunlap made this comment two or three times throughout the day.  O.A. perceived this comment to be weird and inappropriate.  O.A. believed Dunlap wanted her and B.D. to kiss in front of Dunlap.  Dunlap also kept mentioning O.A.'s swimsuit top falling off.

Dunlap told B.D. that he would "'smash'" O.A. if Dunlap was B.D.'s age.  Verbatim Report of Proceedings (VRP) (Jun. 28, 2021) at 166.  B.D. understood this comment to mean Dunlap would have sex with O.A.  O.A. was in the hot tub when Dunlap said this, but Dunlap whispered this comment in B.D.'s ear.  Dunlap also pointed out whenever O.A.'s or M.L.'s swimsuit tops were slipping and told B.D. to look.

M.L. heard Dunlap talking about O.A. and saying he would "'hit that'" if he was her age. VRP (Jun. 28, 2021) at 107.  M.L. understood this comment to mean Dunlap would have sex with O.A.  M.L. remembered Dunlap saying things about O.A.'s body and other things that were sexual in nature while O.A. was in the hot tub, but M.L. could not remember exactly what Dunlap said.

At one point, O.A. got out of the hot tub with M.L. O.A. and M.L. told Kertzman that something felt off and Dunlap was acting weird. Kertzman told O.A. and M.L. to get out of the hot tub or go talk to Davis' boyfriend. O.A. and M.L. returned to the hot tub, but M.L. only sat next to the hot tub to make sure nothing happened to O.A. Dunlap kept making weird comments, and M.L. eventually left the hot tub again to tell her mother that she wanted to leave.

After M.L. left the hot tub area, O.A. was sitting in the hot tub across from B.D. and Dunlap. O.A. felt someone else's feet touching and rubbing her feet. O.A. felt awkward and moved toward B.D. B.D. testified that he never played footsie with O.A. or tickled her toes in the hot tub.

Dunlap started moving closer to O.A., then grabbed her inner upper thigh and moved his hand up and down on her leg. O.A. felt like Dunlap was going to put his hand underneath her swimsuit. O.A. did not want Dunlap to touch her leg and did not tell Dunlap he could touch her leg.

O.A. got out of the hot tub, went inside, and told M.L. what happened. M.L. told O.A. that she needed to tell Kertzman. M.L. and O.A. told Kertzman that Dunlap had touched O.A.'s leg very close to her private part. O.A. was crying and seemed upset. Kertzman called the police and yelled at Dunlap. O.A. and M.L. stayed in the house and heard a confrontation outside. O.A.'s mother eventually showed up and took O.A. home.

In closing arguments, the State asked the trial court to find Dunlap guilty of fourth degree assault with sexual motivation for touching O.A.'s leg. The State also argued that Dunlap was guilty of communication with a minor for immoral purposes and had communicated his desires by

words and conduct, including touching O.A.'s toes and touching her upper thigh. Specifically, the State argued that the touching was "basically the culmination" of Dunlap's words and conduct, and the touching was "very strong evidence of the message [Dunlap] was conveying that he wished to engage in improper, immoral sexual conduct with [O.A.]." VRP (Jun. 28, 2021) at 222.

The trial court found Dunlap guilty of communication with a minor for immoral purposes, fourth degree assault with sexual motivation, and furnishing liquor to minors. In its oral ruling, the trial court discussed the communication with a minor for immoral purposes charge. The trial court reviewed Dunlap's behavior at the party and the sexual discussions leading up to the leg touching. The trial court stated that

> [a]ll of this would have been suggested in mere smoke up until the point at which [Dunlap] touched [O.A.'s] leg at the end. When it got to that point, then it becomes harder and harder to conclude that the actions of [Dunlap] were merely smoke. At that point, I think we see flames.

VRP (Jun. 28, 2021) at 242. The trial court also compared the leg touching to crossing the Rubicon River, making Dunlap's intentions clear both in the present and in hindsight. The trial court found Dunlap guilty of communication with a minor for immoral purposes shortly after making these metaphors.

The trial court entered written findings of fact and conclusions of law that included the following relevant findings of fact:

> 6) While in the hot tub, the defendant made a series of lewd sexual remarks to O.A. or in her presence.
>
> 7) These remarks including [sic] telling O.A. and B.D. that they should "kiss" or "make out." O.A. felt the defendant was suggesting they engage in this conduct in his presence.

5

. . . .

9) The defendant remarked that if he was B.D.'s age he would "hit that" or "smash that" in reference to O.A. The minors present understood this to be a reference to engaging in sexual conduct or sexual intercourse.

. . . .

13) While in the hot tub, the defendant tickled O.A.'s toes under the water. He also moved towards O.A. and placed his hand on her upper thigh. O.A. did not consent to this physical contact and found it [to] be offensive.

. . . .

17) The Court finds that the defendant wished to communicate, and did in fact communicate, to O.A. that he found her sexually desirable. The Court finds that the essence of this communication was the defendant inviting or attempting to cause O.A. to engage in sexual contact with him or with other persons present as a sexual exhibition for his viewing. The defendant's communication was made by both words and conduct. This communication was for an immoral purpose, given the age disparities between the defendant and O.A.

18) The Court finds the touching of O.A.'s thigh by the defendant was an assault as it was unwanted and objectively offensive contact with her person. The Court further finds this crime was sexually motivated, as the defendant committed it for the purpose of his sexual gratification.

Clerk's Papers (CP) at 33-34.

The trial court sentenced Dunlap to 24-60 months of total confinement for communication with a minor for immoral purposes. The trial court also sentenced Dunlap to 364 days total confinement for fourth degree assault with sexual motivation and another 364 days for furnishing liquor to minors. The trial court ordered the sentences to run concurrently. Despite the trial court finding Dunlap indigent and stating that it would "waive the discretionary legal financial obligations," the trial court imposed community custody supervision fees and an LFO collection fee. VRP (Aug. 3, 2021) at 271.

Dunlap appeals.

ANALYSIS

A.   SUFFICIENCY OF THE EVIDENCE

Dunlap argues that the evidence was insufficient to support his conviction for communication with a minor for immoral purposes. As part of his insufficiency of the evidence challenge, Dunlap argues that the trial court erred in making five findings of fact.

We review challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). We view the evidence in the light most favorable to the State and "determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). "Specifically, following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *Id.* at 105-06.[3] "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id.* at 106 (quoting *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)).

---

[3] The State argues that we should not apply the standard of review articulated by our Supreme Court in *Homan*. But our Supreme Court has not overturned *Homan*, and we are constrained to follow our Supreme Court precedent. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

Further, trial courts are required by court rule to enter findings of fact and conclusions of law following a criminal bench trial. CrR 6.1(d). "The purpose of requiring written findings and conclusions is to ensure efficient and accurate appellate review." *State v. Cannon*, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996). No such requirement exists for a jury trial. This difference between bench and jury trials necessitates different standards of review on appeal. Therefore, we apply the standard of review articulated in *Homan*.

An insufficiency of the evidence claim admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Direct and circumstantial evidence are equally reliable. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). And we defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

1.      Findings of Fact

Dunlap argues that the trial court erred in making findings of fact 6, 7, 9, 13, and 17. We disagree.

a.      Finding of fact 6

Dunlap assigns error to finding of fact 6, which states that "[w]hile in the hot tub, the defendant made a series of lewd sexual remarks to O.A. or in her presence." CP at 33. Dunlap argues that, because O.A. only specifically testified about Dunlap's comments that her and B.D. were cute together and should kiss, Dunlap did not make lewd sexual remarks to O.A.

However, finding of fact 6 states that the lewd sexual remarks were made "to O.A. *or in her presence*." CP at 33 (emphasis added). B.D. testified about Dunlap saying he would "'smash'" O.A. while he was in the hot tub with O.A. VRP (Jun. 28, 2021) at 166. M.L. testified that Dunlap talked about O.A. and said he would "'hit that.'" VRP (Jun. 28, 2021) at 107. Although she could not remember the exact comments, M.L. also remembered Dunlap saying things about O.A.'s body while O.A. was in the hot tub and other things that were sexual in nature. Altogether, the three

children's testimony about Dunlap's comments is sufficient to persuade a fair-minded person that Dunlap made lewd sexual comments to O.A. or in her presence while he was in the hot tub. Therefore, finding of fact 6 is supported by substantial evidence.

b.      Finding of fact 7

Dunlap assigns error to finding of fact 7, which states that "[t]hese remarks including [sic] telling O.A. and B.D. that they should 'kiss' or 'make out.' O.A. felt the defendant was suggesting they engage in this conduct in his presence." CP at 33. Dunlap argues that, because no one testified about "making out," this finding is unsupported.

Finding of fact 7 is written in the alternative with an "or." While the record shows that no person specifically testified about "making out," both O.A. and B.D. testified that Dunlap told them they should kiss. Further, O.A. testified that she believed Dunlap wanted her and B.D. to kiss in front of Dunlap. Together, O.A.'s and B.D.'s testimony is sufficient to persuade a fair-minded person that Dunlap told O.A. and B.D. they should kiss and that O.A. felt Dunlap was suggesting they kiss in his presence. Therefore, finding of fact 7 is supported by substantial evidence.

c.      Finding of fact 9

Dunlap assigns error to finding of fact 9, which states that "[t]he defendant remarked that if he was B.D.'s age he would 'hit that' or 'smash that' in reference to O.A. The minors present understood this to be a reference to engaging in sexual conduct or sexual intercourse." CP at 33. Dunlap argues that this finding of fact is unsupported because O.A. did not hear these statements

9

and thus could not have understood the statements to be references to sexual conduct or intercourse.

But the finding of fact only states that the "minors present" understood the comments to be sexual references and does not specifically mention O.A. CP at 33. Both B.D. and M.L. were minors who were present, and both testified that they understood Dunlap's comments to be references to Dunlap having sex with O.A. B.D.'s and M.L.'s testimony about Dunlap's comments is sufficient to persuade a fair-minded person that Dunlap made the "hit that" or "smash that" comments about O.A., and that the minors present at the time of the comments understood them to be references to engaging in sexual conduct or sexual intercourse with O.A. Therefore, finding of fact 9 is supported by substantial evidence.

> d. Finding of fact 13

Dunlap assigns error to finding of fact 13, which states that "[w]hile in the hot tub, the defendant tickled O.A.'s toes under the water. He also moved towards O.A. and placed his hand on her upper thigh. O.A. did not consent to this physical contact and found it be offensive." CP at 33. Dunlap argues that the finding that Dunlap tickled O.A.'s toes under the water is unsupported by the evidence.

While O.A. did not testify specifically about "tickling," she did testify that someone in the hot tub with her touched and rubbed her feet. The people in the hot tub were B.D. and Dunlap. B.D. testified that he did not play footsie with O.A. or tickle O.A.'s feet. The circumstantial evidence allows an inference that Dunlap was the one who touched and rubbed O.A.'s feet in the hot tub. To the extent that the finding should have used the word "touched" or "rubbed" instead

of "tickled," this shift in wording does not affect the analysis or outcome regarding the sufficiency of the evidence. O.A.'s and B.D.'s testimony on the foot touching is sufficient to persuade a fair-minded person that Dunlap rubbed O.A.'s feet or toes. Therefore, finding of fact 9 is supported by substantial evidence.

> e. Finding of fact 17

Finally, Dunlap assigns error to finding of fact 17, which states that

> [t]he Court finds that the defendant wished to communicate, and did in fact communicate, to O.A. that he found her sexually desirable. The Court finds that the essence of this communication was the defendant inviting or attempting to cause O.A. to engage in sexual contact with him or with other persons present as a sexual exhibition for his viewing. The defendant's communication was made by both words and conduct. This communication was for an immoral purpose, given the age disparities between the defendant and O.A.

CP at 34. Dunlap argues that the evidence does not show that Dunlap's communications were "inviting or attempting to cause O.A. to engage in sexual contact with him or with other persons present as a sexual exhibition for his viewing." CP at 34.

But the children's testimony showed that Dunlap repeatedly made remarks regarding O.A. and her body, mentioned O.A.'s swimsuit top falling off and pointed out when it was slipping, expressed a desire to have sex with O.A., and stated that B.D. and O.A. should kiss, which O.A. understood to mean in front of Dunlap.[4] Further, the children's testimony showed that Dunlap touched O.A.'s feet, then moved closer to O.A. and touched her upper inner thigh near her private

---

[4] Dunlap argues that his comments that O.A. and B.D. should kiss were not sexual because they would not be sexual if used in a Disney movie, when taking prom photos, or when directing a coming-of-age movie. But the record shows that the events in the hot tub were not comparable to a children's movie, prom photoshoot, or movie set. We reject Dunlap's invitation to ignore the totality of the record revealing the sexual context of his comments.

part. O.A. also testified that she felt like Dunlap was going to put his hand underneath her swimsuit. The children's testimony about Dunlap's comments and conduct would persuade a fair-minded person that Dunlap's comments about kissing were intended to prompt sexual behavior with B.D. for Dunlap's viewing and the thigh touch was attempting to cause O.A. to engage in sexual contact with Dunlap. Therefore, finding of fact 17 is supported by substantial evidence.

2.      Conclusion of Law

Dunlap argues that because the evidence was insufficient to support his conviction for communication with a minor for immoral purposes, the trial court erred by concluding that he is guilty of communication with a minor for immoral purposes. We disagree.

The State charged Dunlap with communication with a minor for immoral purposes in violation of RCW 9.68A.090(2).[5] To be convicted of communication with a minor for immoral purposes, the State had to prove that Dunlap communicated with O.A. "'for the predatory purpose of promoting [her] exposure to and involvement in sexual misconduct.'" *State v. Hosier*, 157 Wn.2d 1, 9, 133 P.3d 936 (2006) (quoting *State v. McNallie*, 120 Wn.2d 925, 933, 846 P.2d 1358 (1993)). "Communication" includes both words and conduct. *Id.* at 11. The message must be

---

[5] RCW 9.68A.090(2) provides that

> [a] person who communicates with a minor for immoral purposes is guilty of a class C felony punishable according to chapter 9A.20 RCW if the person has previously been convicted under this section or of a felony sexual offense under chapter 9.68A, 9A.44, or 9A.64 RCW or of any other felony sexual offense in this or any other state or if the person communicates with a minor or with someone the person believes to be a minor for immoral purposes, including the purchase or sale of commercial sex acts and sex trafficking, through the sending of an electronic communication.

both transmitted by the defendant and received by the minor. *Id.* at 9. The statute "incorporates within its scope a relatively broad range of sexual conduct involving a minor." *State v. Jackman*, 156 Wn.2d 736, 748, 132 P.3d 136 (2006). Communications made for the defendant's own sexual excitement are "exactly the sort of conduct the legislature intended to prohibit." *Hosier*, 157 Wn.2d at 11.

Here, the trial court made findings of fact that are either supported by substantial evidence as discussed above, or are unchallenged and, therefore, verities on appeal. *See Homan*, 181 Wn.2d at 106. The trial court found that Dunlap spent several hours in a hot tub with three minors, made lewd sexual remarks to O.A. or in her presence, suggested that O.A. kiss B.D., repeatedly mentioned an incident with O.A.'s swimsuit becoming disheveled, told the minors that he would "'hit that'" or "'smash that'" in reference to OA., touched O.A.'s toes under the water, and put his hand on O.A.'s upper thigh. CP at 33.

Dunlap argues that we should only consider the comments made directly to O.A. It is true that the communications themselves must be both transmitted by the defendant and received by the minor. *Hosier*, 157 Wn.2d at 9. But Dunlap cites no authority stating that the comments made to the other children cannot be considered as context for interpreting the communications made to O.A. Where a party cites no authority in support of a proposition, we may assume counsel has found none. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962); *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020), *review denied*, 196 Wn.2d 1047 (2021). We hold that Dunlap's comments to the other children can be considered as evidence

regarding the context of the communications to O.A. and how those communications could be interpreted.

Dunlap also argues that we should not consider the touching of O.A.'s thigh as evidence supporting the communication with a minor for immoral purposes conviction because the trial court did not explicitly mention the touching in finding of fact 17. But the trial court found that Dunlap's "communication was made by both words and conduct." CP at 34. The trial court's oral ruling shows that the "conduct" included Dunlap's touching of O.A.'s thigh. *See State v. Kull*, 155 Wn.2d 80, 88, 118 P.3d 307 (2005) ("An appellate court may consider a trial court's oral decision so long as it is not inconsistent with the trial court's written findings and conclusions."). Therefore, we can consider the thigh touching as part of the evidence supporting Dunlap's conviction for communication with a minor for immoral purposes.

Further, Dunlap argues that his conviction should be reversed because the State failed to prove that he communicated with O.A. for the predatory purpose of promoting O.A.'s exposure to and involvement in *illegal* sexual misconduct.[6] Dunlap argues that the statute does not apply to

---

[6] It is unclear if Dunlap attempts to raise an unconstitutional vagueness argument in his reply brief regarding this interpretation of the communication with a minor for immoral purposes statute. We do not consider any such argument because arguments raised for the first time in a reply brief are raised too late. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.") Further, as discussed in this opinion, the record shows that Dunlap sought to expose O.A. to and involve O.A. in illegal sexual misconduct. Therefore, regardless of the outcome of an unconstitutional vagueness argument on this issue, the evidence still supports Dunlap's conviction for communication with a minor for immoral purposes. *See State v. Schwab*, 141 Wn. App. 85, 95 n.6, 167 P.3d 1225 (2007) ("[W]e may not rule on a constitutional issue when we can decide the case on other grounds."), *review denied*, 164 Wn.2d 1009 (2008), *cert. denied*, 555 U.S. 1188 (2009).

communications that promote *legal* sexual misconduct. But we need not decide whether communications regarding legal sexual misconduct violate the statute because the evidence shows that Dunlap communicated with O.A. for the predatory purpose of promoting O.A.'s exposure to and involvement in illegal sexual misconduct. Dunlap's communications included touching O.A.'s thigh. That act of touching was illegal sexual misconduct—the trial court concluded that the thigh touching constituted fourth degree assault with sexual motivation. Further, any sexual contact between Dunlap and O.A. was illegal, given that Dunlap was thirty-nine years old and O.A. was twelve years old. *See* RCW 9A.44.086(1).[7]

Therefore, the trial court's findings of fact, all of which are either verities on appeal or supported by substantial evidence, support a conclusion that Dunlap communicated with O.A. for the predatory purpose of promoting her exposure to and involvement in sexual misconduct. These findings support the trial court's conclusion that Dunlap was guilty of communication with a minor for immoral purposes. *See Hosier*, 157 Wn.2d at 9. Accordingly, we affirm Dunlap's conviction for communication with a minor for immoral purposes.

---

[7] RCW 9A.44.086(1) provides that

> [a] person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim.

> RCW 9A.44.086 was amended in 2021. However, no changes were made affecting this appeal. Therefore, we cite to the current statute.

No. 56199-9-II

B.      DOUBLE JEOPARDY

Dunlap argues that the trial court violated double jeopardy by entering convictions for both communication with a minor for immoral purposes and fourth degree assault with sexual motivation. The State concedes that the communication with a minor for immoral purposes and fourth degree assault with sexual motivation convictions violate double jeopardy, and the fourth degree assault with sexual motivation conviction must be vacated. We accept the State's concession.

We review double jeopardy claims de novo. *State v. Fuller*, 185 Wn.2d 30, 34, 367 P.3d 1057 (2016). The right to be free from double jeopardy protects a defendant from being punished for the same offense multiple times. *Id.* at 33-34. "Nevertheless, the legislature may constitutionally authorize multiple punishments for a single course of conduct." *State v. Thompson*, 192 Wn. App. 733, 737, 370 P.3d 586, *review denied*, 185 Wn.2d 1041 (2016).

We use a three-step analysis to determine whether the legislature authorized multiple punishments for one course of conduct. *Id.* First, we consider the legislative intent based on the language of the criminal statutes involved. *Id.* Second, if the statutes are silent, we apply the *Blockburger*[8] "same evidence" test, "which asks if the crimes are the same in law and fact: in other words, whether, as charged, each offense includes elements not included in the other and whether proof of one offense would also prove the other." *Id.* Third, if applicable, we apply the merger doctrine to determine legislative intent "where the degree of one offense is elevated by conduct constituting a separate offense." *Id.* at 737-38.

---

[8]  *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

16

Here, the statutes for communication with a minor for immoral purposes and fourth degree assault do not provide any indication that the legislature intended to authorize cumulative punishment. *See* RCW 9.68A.090; RCW 9A.36.041.[9] And both parties agree that the merger doctrine does not apply to this case because neither of the offenses were used to elevate the other offense. Therefore, we turn to the "same evidence" test. *Thompson*, 192 Wn. App. at 737.

Under the same evidence test, we must determine "in a nonabstract manner, whether two offenses are the same in law and in fact." *State v. Hancock*, 17 Wn. App. 2d 113, 118, 484 P.3d 514, *review denied*, 198 Wn.2d 1005 (2021). "If each offense includes an element not included in the other, and each requires proof of a fact the other does not, then the offenses are not constitutionally the same under this test." *State v. Hughes*, 166 Wn.2d 675, 682, 212 P.3d 558 (2009). The same evidence test requires this court to "look to the entire record," and how the case was charged and proven, to determine whether "each offense required proof of a fact that the other did not." *Hancock*, 17 Wn. App. 2d at 120; *State v. Meneses*, 169 Wn.2d 586, 594, 238 P.3d 495 (2010).

As discussed above, for the communication with a minor for immoral purposes charge, the State was required to prove that Dunlap communicated with O.A. through words or conduct for the predatory purpose of exposing or involving O.A. in sexual misconduct. *Hosier*, 157 Wn.2d at 9, 11. To prove fourth degree assault with sexual motivation, the State was required to prove that Dunlap intentionally touched O.A. in a harmful or offensive way for his own sexual gratification.

---

[9] RCW 9A.36.041 was amended in 2020 and 2022. However, no substantive changes were made affecting this appeal. Therefore, we cite to the current statute.

RCW 9.94A.030(48)[10]; *State v. Jarvis*, 160 Wn. App. 111, 119, 246 P.3d 1280, *review denied*, 171 Wn.2d 1029 (2011).

Here, the State argued that Dunlap's touching of O.A. was part of Dunlap's communication with a minor for immoral purposes. The trial court noted in its written findings that the communication charge was proven by Dunlap's "words and conduct." CP at 34. Dunlap's "conduct" proving the communication charge was the touching of O.A.'s thigh. The touching of O.A.s thigh was the same conduct upon which the fourth degree assault with sexual motivation rested and was sufficient for proving fourth degree assault with sexual motivation. *See* RCW 9.94A.030(48); *Jarvis*, 160 Wn. App. at 119. Given the way the State charged and proved the two offenses, the fourth degree assault with sexual motivation conviction required the same proof of fact which the communication with a minor for immoral purposes conviction required. Therefore, the convictions were the same in law and fact, and the convictions violate double jeopardy.

When double jeopardy has been violated, the lesser conviction must be vacated, "meaning either the offense that forms part of the proof of the other (greater) offense or the offense that triggers the lesser sentence." *State v. Albarran*, 187 Wn.2d 15, 21-22, 383 P.3d 1037 (2016). Here, fourth degree assault with sexual motivation is the offense forming part of the proof for the communication with a minor for immoral purposes conviction. Fourth degree assault with sexual motivation also triggers the lesser sentence—the trial court sentenced Dunlap to 364 days for fourth degree assault with sexual motivation and 24-60 months for communication with a minor

---

[10] RCW 9.94A.030 was amended in 2019, 2020, 2021, and 2022. However, no substantive changes were made affecting this appeal. Therefore, we cite to the current statute.

for immoral purposes. Therefore, fourth degree assault with sexual motivation meets both definitions of a "lesser" conviction. Accordingly, we reverse Dunlap's conviction for fourth degree assault with sexual motivation and remand for the trial court to vacate that charge.

C.     LFOs

Dunlap argues that the trial court erred by imposing community custody supervision fees and an LFO collection fee. The State concedes that the community custody supervision fees and LFO collection fee were imposed in error and should be stricken. We accept the State's concession.

Under former RCW 9.94A.703(2)(d) (2018), trial courts could waive community custody supervision fees. Thus, community custody supervision fees were discretionary LFOs because they were waivable by the court. *State v. Bowman*, 198 Wn.2d 609, 629, 498 P.3d 478 (2021).

Trial courts are also authorized by RCW 36.18.190 to impose LFO collection fees. RCW 36.18.190 states in relevant part that "[t]he superior court *may*, at sentencing or at any time within ten years, assess as court costs the moneys paid for remuneration for services or charges paid to collection agencies or for collection services." (Emphasis added.) The plain statutory language shows that LFO collection fees are also discretionary.

Here, the trial court found Dunlap indigent and stated that it intended to waive discretionary LFOs. Because the challenged LFOs are both discretionary and the record is clear that the trial court intended to waive discretionary LFOs, we hold that the trial court erred in imposing the community custody supervision fees and LFO collection fee.

No. 56199-9-II

We affirm Dunlap's communication with a minor for immoral purposes conviction, reverse his fourth degree assault with sexual motivation conviction, and remand to trial court to vacate the fourth degree assault with sexual motivation charge and resentence Dunlap in accordance with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, C.J.

Price, J.