# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70937-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DANIEL TIMOTHY LAVELY, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 6, 2015 |
| | ) | |

LEACH, J. — Daniel Lavely appeals his conviction for custodial sexual misconduct in the first degree. He challenges the sufficiency of the evidence to prove that he detained the victim and claims several acts of prosecutorial misconduct. Viewed in the light most favorable to the State, the record contains sufficient evidence to allow a rational juror to find beyond a reasonable doubt that Lavely detained the victim. Because Lavely indicated that he would put the victim's credibility in issue before the prosecutor questioned her about her veracity, the prosecutor did not improperly vouch for the victim. Even if the prosecutor improperly questioned the victim and improperly shifted the burden of proof to Lavely, Lavely did not object on these grounds at trial and does not show that the prosecutor's conduct was so flagrant and ill intentioned that a jury instruction would not have remedied any prejudice. Thus, his claims of

prosecutorial misconduct fail. Lavely's claims of cumulative error fail for the same reason. We affirm.

FACTS

On May 6, 2012, at 1:00 p.m., Lynnwood Police Officer Iverson encountered M.M. at the Studio 6 Motel in Mountlake Terrace. After learning of a Seattle Police Department (SPD) warrant for her arrest, he attempted to arrest M.M. M.M. was high on methamphetamine. Officer Iverson struggled to arrest M.M., and she broke a tooth. He cited her for resisting arrest, released her on that charge, and took her to the hospital. When he discovered SPD could not take her into custody, he dropped her off at the Home Depot on 205th Street and Aurora. M.M. then went to Andy's Motel on Highway 99.

At around 8:00 p.m., Daniel Lavely, then an Edmonds police officer patrolling Highway 99, stopped M.M. for jaywalking. M.M. told Lavely about the warrant and her encounter with Officer Iverson that resulted in her broken tooth. While M.M. sat in the back of his patrol car, Lavely unsuccessfully attempted to get SPD to take custody of her. Officer Robinson arrived to assist but soon left. Lavely dropped M.M. off at around 9:00 p.m. at Top Foods on Highway 99. He told M.M. that he would arrest her if he saw her on Highway 99 again. When Lavely saw Officer Iverson later that night, Lavely asked Iverson if M.M. was a prostitute.

M.M. returned to Andy's Motel. She found a woman she knew, who directed her to Larry Wheeler's room. People in the room were drinking and watching television. Derrick Wheeler, Larry's son, left the room. During his absence, Larry and M.M. had sexual intercourse. Derrick returned to find Larry sleeping and M.M. dancing around the room naked. Derrick took her to the hospital, telling the staff that M.M. was high and had threatened suicide. While she was high on methamphetamine, she had not threatened suicide. M.M. ran out of the hospital, and Derrick called 911 to report her.

Lavely responded, telling the dispatcher that he would conduct an area check. From the dispatcher's description, he assumed that the woman was M.M. At the hospital, he learned that Derrick had left in the direction of Andy's Motel. At Andy's Motel, Lavely found Derrick and asked him to see if M.M. was in his room. Derrick found her there and told Lavely.

Lavely told M.M. that she needed to "leave" the motel room. Derrick remembers that Lavely said, "[M.M.], you need to come with me," and held her upper arm as he escorted her down the motel stairs. M.M. testified that Lavely told her to "come with him" but said Lavely did not touch her at that point. M.M. asked if she could leave, and Lavely told her that she could not. Lavely placed her in the backseat of his patrol car. She first sat in the backseat with her feet

outside of the patrol car but moved her feet in the car when Lavely shut the car door. M.M. could not open the rear doors of the patrol car from inside the car.

Lavely testified that he removed M.M. from the hotel room at Derrick's request and as part of his duties. He testified that he would only arrest her if she refused to leave and that he held her arm to help her with her balance. He stated that M.M. asked for a ride and that he said he could drive her south toward Seattle. She kept her purse with her, and Lavely testified that she was free to leave. He testified further that he thought M.M. propositioned him for sex by asking him for money during the ride. He did not give her money. At her request, he dropped her off in a well-lit area near Burlington Coat Factory. He opened the rear door for M.M., and she had a condom wrapper in her hand. He pulled her out of the vehicle, and their contact ended there.

M.M. testified differently. She testified that at the Burlington Coat Factory, Lavely drove her around to the back of the building, backing his car into some trees to face the loading dock. Lavely then opened the rear door. He told her to get out and to put her hands on the back side window of the car. She thought he was going to take her to the precinct or to a mental hospital. He patted her down, began to rub her breasts under her shirt, and put his hand down her pants and rubbed her vagina. Lavely asked M.M., "Can I make you cum?" M.M. was scared and said, "Yes." When Lavely asked her for a condom, she retrieved one,

-4-

turned toward Lavely, and put it on him. She turned back around, pulled her pants down, and he penetrated her vagina. M.M. stated that afterward, M.M. turned to hug him, but he held up his hands and said, "Just go." M.M. ran around the front of the building and saw a street sweeper. She asked him if police went back behind the building all the time and told him she was raped and about her tooth.

Ronnie Phillips, a Burlington Coat Factory parking lot sweeper, also testified for the State. He began his shift at 2:57 a.m. on May 7. He saw M.M. run around the front of the building and approach him, upset and crying. He wore earmuffs and his leaf blower was running. He heard her say a police officer had punched her in the mouth.

She walked back toward Andy's Motel. A man driving by M.M. stopped and offered help. He drove M.M. to 7-11. There he bought her cigarettes at 3:12 a.m. according to his receipt. M.M. talked to him for 30 minutes, and he dropped her at Traveler's Inn. M.M. testified that as she got out of the car, she saw Lavely drive up in his police car, look at her, and drive off. M.M. returned to Andy's Motel and told Derrick that she had been raped. Joel Kennedy, another person at Andy's Motel that night, described M.M. as upset and crying. She also told him that a police officer had raped her.

On May 9, M.M. encountered Officer Osborn at Studio 6 and reported to him that one police officer had used excessive force against her and another had raped her. Osborn reported the rape allegation to his supervisor and took M.M. to Mountlake Terrace Police Department for an interview. Police went to Burlington Coat Factory that day and found a condom wrapper in the parking lot behind the building that matched the condom wrappers collected from M.M.'s belongings.

Detective Kowalchyk from Everett Police Department investigated M.M.'s case. M.M. gave the detective a description and picked Lavely's photo from a photo montage. Detective Kowalchyk interviewed Lavely on May 17. Lavely told her that he said to M.M. at Andy's Motel, "Let's go get in the car. I'm going to take you down to the bus stop." Lavely then met with Assistant Chief Lawless at Edmonds Police Department, appearing shaken and telling Assistant Chief Lawless he was sorry.

At trial, Corporal Shane Hawley testified that Edmonds Police Department policies require officers who go to motels on Highway 99 to notify dispatch when en route, upon arrival, and of their exact location, such as a room number. An officer must call dispatch when transporting someone of the opposite sex to communicate that transport has begun and must report odometer readings at the beginning and end of the trip. Officers typically take a person who cannot be

served a warrant to a bus station behind Costco and not to Burlington Coat Factory. Lavely contacted dispatch once to clear the call before he went to the hospital in response to Derrick's call. He next contacted dispatch again at 3:07 a.m., after M.M. had left, to say he was transporting a female he picked up on the 22200 block of Highway 99, without giving the Andy's Motel name. He reported that he had dropped her off at 3:12 a.m. at the bus station.

The State charged Lavely with custodial sexual misconduct in the first degree, and a jury found him guilty. Lavely appeals.

## STANDARD OF REVIEW

This court reviews a claim of insufficient evidence to see if, "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[1] A defendant challenging the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences a fact finder could draw from it.[2] A reviewing court defers to the trier of fact to resolve conflicting testimony and evaluate the persuasiveness of the evidence.[3]

To establish a claim of prosecutorial misconduct, a defendant must show that the conduct was both improper and prejudicial.[4] If a defendant does not

---

[1] State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).
[2] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[3] State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).
[4] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)).

object to a prosecutor's statements or conduct at trial, then he or she waives the issue on appeal "unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."[5] To establish prejudice, the defendant must show a substantial likelihood exists that the misconduct affected the jury's verdict.[6]

## ANALYSIS

Lavely claims that the State presented insufficient evidence to prove an element of custodial sexual misconduct in the first degree, that M.M. was "being detained" at the time of the sexual act. We have reviewed the record to see if a rational trier of fact could find beyond a reasonable doubt that Lavely detained M.M. for purposes of the statute.[7]

Under RCW 9A.44.160(1)(b), "A person is guilty of custodial sexual misconduct in the first degree when the person has sexual intercourse with another person: . . . (b) When the victim is being detained, under arrest[,] or in the custody of a law enforcement officer and the perpetrator is a law enforcement officer." This court has defined "being detained" as a seizure or a "'restraint on freedom of movement to such a degree that a reasonable person would not have felt free to leave.'"[8] This inquiry examines the particular, objective facts of the

---

[5] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).
[6] Monday, 171 Wn.2d at 675.
[7] See Hosier, 157 Wn.2d at 8.
[8] State v. Torres, 151 Wn. App. 378, 380, 212 P.3d 573 (2009).

encounter.[9] Evidence indicating a possible seizure, even where a person did not attempt to leave, includes an officer's touching of the person or use of language or tone of voice indicating compliance might be compelled.[10]

Lavely argues that his conduct and language toward M.M. at the motel did not constitute a detention. The record shows that Lavely did not give M.M. the choice of leaving Andy's Motel without him. At the motel room, M.M. asked Lavely if she could leave and he said no, that she had to come with him. Lavely asserts that this comment is consistent with the officer's duty to remove an unwanted guest and ensure M.M. left the premises. Lavely analogizes his instruction to M.M. to the officer's question, "Where is the pipe?" in State v. Thorn.[11] In that case, the parties stipulated to the officer's question and presented no evidence of the officer's manner, tone of voice, or body language.[12] As a result, the limited record contained insufficient evidence to show a seizure because it presented no facts on which to base a finding that the officer's question was coercive.[13] In contrast, the testimony of M.M., Lavely, and Derrick about the encounter, viewed in the light most favorable to the State, provided

_____

[9] Torres, 151 Wn. App. at 386 (quoting State v. Armenta, 134 Wn.2d 1, 11, 948 P.2d 1280 (1997)).

[10] State v. Young, 135 Wn.2d 498, 512, 957 P.2d 681 (1998) (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

[11] 129 Wn.2d 347, 353-54, 917 P.2d 108 (1996) overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 62 P.3d 489 (2003).

[12] Thorn, 129 Wn.2d at 349.

[13] Thorn, 129 Wn.2d at 353-54.

sufficient evidence of the totality of the circumstances to establish for a rational juror the coercive nature of Lavely's instruction.

Lavely further claims that the State cannot prove that he applied force to M.M. He claims that briefly holding her arm is not analogous to handcuffs or other force that indicates detention. He did not search her, and he never removed M.M.'s property from her. But the State produced evidence that Lavely escorted her to his car while holding her upper arm. M.M. sat in the backseat of Lavely's patrol car. Lavely shut the door, which did not open from the inside. Lavely then drove M.M. to a parking lot behind Burlington Coat Factory, removed M.M. from the car, and made her place her hands on the back side window of the car while facing away from him. He first touched her body as if searching her. Then he touched her sexually. Given the particular, objective facts of the encounter, a rational juror could find that a person in M.M.'s position would not have felt free to leave.

At oral argument, Lavely argued that the custodial sexual misconduct statute requires the detention have a lawful purpose and the prosecutor failed to show that Lavely had a lawful purpose in detaining M.M. We reject this assertion without deciding if Lavely's premise is correct. The record contains sufficient evidence to allow a rational juror to find that the detention began with the lawful purpose of removing a trespasser from a motel room.

In summary, we conclude that under the totality of the circumstances, the record sufficiently supports a rational juror's conclusion that a reasonable person in M.M.'s position would not believe she was free to leave and that M.M.'s detention began with a lawful purpose. Thus, sufficient evidence supports Lavely's conviction for custodial sexual misconduct in the first degree.

Lavely also alleges three claims of prosecutorial misconduct. First, Lavely contends that the prosecution improperly vouched for M.M. During direct examination of M.M., the prosecutor listed her criminal history involving crimes of dishonesty. Lavely claims that the prosecutor improperly vouched for M.M. when the prosecutor asked M.M.,

> Q: You understand the importance of telling the truth on the witness stand.
>
> A: Yes.
>
> Q: Have you ever asked me or anyone in my office for any kind of deal on any of your other cases with respect to this case?
>
> A: No.

Lavely did not object. He also contends that the prosecutor improperly vouched for M.M.'s credibility when, during its closing rebuttal, the prosecutor argued,

> I want you to consider [that] [M.M.] told you she is serving a sentence. She is so desperate to get out, she never asked me for anything.

Lavely objected on the basis of improper vouching, and the trial court instructed the jury to "recall the testimony."

A prosecutor may not express a personal belief in the veracity of a witness.[14] Only a trier of fact may decide if a witness truthfully testifies.[15] In closing argument, a prosecutor has wide latitude to argue reasonable inferences from the evidence, including those about witness credibility.[16] A prosecutor must make a clear statement of opinion for the court to consider it opinion evidence.[17] Whether a witness agreed to testify truthfully has little probative value and may not be admitted as part of the State's case in chief.[18] Our Supreme Court has clearly stated its view:

> Evidence that a witness has entered into a formal agreement with the State to testify truthfully should be excluded during direct examination. Once the witness's credibility has been attacked during cross-examination, the prosecutor may reference the witness's promise to testify truthfully on redirect. However, such evidence should be limited, and the prosecutor may not express a personal belief regarding the witness's credibility or imply that evidence outside of the record would ensure that the promise has been kept.[19]

Because Lavely did not object to the challenged testimony, he must show the claimed misconduct to be so flagrant and ill intentioned that it caused prejudice that a proper instruction could not cure.[20] Lavely argues that by

---

[14] State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).
[15] State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010).
[16] Thorgerson, 172 Wn.2d at 448.
[17] State v. McKenzie, 157 Wn.2d 44, 53-54, 134 P.3d 221 (2006) (quoting State v. Papadopoulos, 34 Wn. App. 397, 400, 662 P.2d 59 (1983)).
[18] Ish, 170 Wn.2d at 198.
[19] Ish, 170 Wn.2d at 201.
[20] See Emery, 174 Wn.2d at 760-61.

asserting that M.M. did not make a deal with the State, the prosecutor improperly placed the "State's seal of approval" on M.M.'s testimony. Lavely cites State v. Ish[21] to support this argument. In that case, the court found the prosecutor committed misconduct when she referenced a plea agreement where the witness promised to testify truthfully, thus vouching for the witness's credibility.[22] Here, Lavely argues, the prosecutor used the absence of an agreement to do the same. And, Lavely argues, because the State relied on M.M.'s testimony to establish that M.M. and Lavely had sexual intercourse, the jury's determination of M.M.'s credibility determined the outcome of the case and improper vouching jeopardized the trial's fundamental fairness.

The State counters that unlike in Ish, testimony to the absence of an agreement does not carry the same implied verification that M.M. testified truthfully. Moreover, when the State reasonably anticipates an attack on its witness's credibility, it may address the issue on direct examination.[23] Here, the prosecutor's case relied heavily on M.M.'s credibility. And in Lavely's opening statements, defense counsel stated that Lavely "is accused by someone who was seeking to further her self interest during the course of a multi-day drug binge," listed M.M.'s criminal history, and asked the jury to determine the truth. Thus, the prosecutor could reasonably anticipate that Lavely would attack M.M.'s

---

[21] 170 Wn.2d 189, 241 P.3d 389 (2010).
[22] Ish, 170 Wn.2d at 199.
[23] State v. Bourgeois, 133 Wn.2d 389, 402, 945 P.2d 1120 (1997).

credibility in cross-examination. Under these circumstances, the prosecutor did not have to wait until after the attack to address M.M.'s credibility. Additionally, had Lavely objected, an instruction to the jury to ignore the evidence would have remedied any prejudice from the challenged conduct. Thus, this claim fails.

Lavely argues the State's closing rebuttal argument also improperly vouched for M.M.'s credibility. The State argues that it properly responded to Lavely's closing argument. In closing, Lavely directly attacked M.M.'s credibility and questioned her motive for testifying, suggesting she lied about Lavely having sex with her.

Courts afford a prosecutor wide latitude in closing argument, and a prosecutor may argue inferences from the evidence.[24] To engage in improper vouching, a prosecutor must clearly state a personal opinion about the truth of the witness's statements.[25] Here, the prosecutor did not make an unequivocal statement indicating the expression of a personal opinion but argued from the evidence that M.M. did not have a personal interest in fabricating a story. In so arguing, the State attempted to enhance M.M.'s credibility and respond to Lavely's argument. Thus, the prosecutor's closing argument on rebuttal did not constitute improper vouching.

---

[24] State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995); Thorgerson, 172 Wn.2d at 453.
[25] Brett, 126 Wn.2d at 175.

In addition, Lavely cannot show prejudice. After Lavely's objection to the prosecutor's rebuttal argument, the court instructed the jury to recall the evidence. It later instructed the jury that "[i]f evidence was not admitted or was stricken from the record," it may not consider that evidence. Courts presume that juries follow judges' instructions.[26] To convict Lavely, the jury had to believe M.M.'s account that she and Lavely had sexual intercourse. However, other evidence supported M.M.'s testimony. The State produced evidence of a condom wrapper behind Burlington Coat Factory matching one M.M. carried. A witness saw M.M. very upset in front of Burlington Coat Factory at around 3:00 a.m. on May 7. That night, M.M. reported to Derrick and Joel Kennedy that an officer had raped her. A jury could find that this evidence, considered as a whole, corroborated M.M.'s story. Thus, Lavely cannot show prejudice.

Lavely next contends that the prosecutor violated the advocate-witness rule by injecting into M.M.'s testimony that she needed to tell the truth, thus attempting to prove her credibility through his own words and actions. Lavely argues that the prosecutor did this when he indicated that M.M. did not seek any agreement with the prosecution in exchange for her testimony, asked if anyone had told her what to say, and indicated that he had instructed her to tell the truth.

---

[26] Emery, 174 Wn.2d at 766.

On cross-examination of M.M., Lavely questioned M.M. about her contact with Officer Iverson and asked if she had exaggerated her injuries to support her assault claim. M.M. admitted to being high when the police interviewed her. The prosecutor rebutted:

> Q: Has anyone ever told you, either me, Detective Kowalchyk, anybody from my office, has anybody ever told you what to say?
>
> A: No.
>
> Q: Actually, I have told you something before, haven't I, about what happens on the witness stand.
>
> A: Yeah.
>
> Q: What did I tell you?
>
> A: That—that they try and get you to say stuff that you don't—

Lavely objected. The trial court sustained. The prosecutor continued:

> Q: Did I tell you to—did I ask—did I tell you—
>
> A: Tell the truth.
>
> Q: I told you to tell the truth. How many times have I told you that during this case?

Lavely objected that the response was "asked and answered." The trial court sustained this objection.

Lavely cites United States v. Edwards[27] to show that a prosecutor may not testify to his own knowledge by eliciting witness testimony about a prosecutor's

---

[27] United States v. Edwards, 154 F.3d 915, 922 (9th Cir. 1998).

actions. Washington case law prohibits an attorney from imparting personal knowledge about an issue through direct or cross-examination when that evidence is not admitted otherwise.[28] A prosecutor may not refer to extrinsic evidence never introduced.[29] Courts look to see if the question's focus is to place the prosecutor's personal knowledge before the jury without the prosecutor formally testifying.[30]

Because Lavely did not object on the grounds of the prosecutor's improper testimony, he waived the right to appeal this issue[31] unless he can show the prosecutor's questions were so flagrant and ill intentioned that a jury instruction could not cure the error. Had Lavely properly objected, the questions might never have been answered. If they were, the court could have ordered the testimony stricken from the record and instructed the jury to disregard the testimony.[32] When both parties rested, the court instructed the jury on both witness credibility and the role of counsel at trial and that the lawyer's words or actions did not constitute evidence.

---

[28] State v. Denton, 58 Wn. App. 251, 257, 792 P.2d 537 (1990).
[29] State v. Miles, 139 Wn. App. 879, 887, 162 P.3d 1169 (2007).
[30] Miles, 139 Wn. App. at 887 (quoting State v. Lopez, 95 Wn. App. 842, 855, 980 P.2d 224 (1999)).
[31] See State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).
[32] See State v. Cleveland, 58 Wn. App. 634, 648, 794 P.2d 546 (1990).

If the prosecutor improperly questioned M.M. about his own actions, a jury instruction would have remedied any prejudice from the improper questions and answers. Thus, Lavely's challenge based on the advocate-witness rule fails.

Lavely argues that the State improperly shifted the burden of proof to Lavely. In closing argument, Lavely questioned M.M.'s credibility. The State's rebuttal included the following comment:

> You can believe what happened to [M.M.] because cross examination by Counsel really didn't put holes in her story. After an hour plus interview with Detective Kowalchyk, after a two-plus hour interview with the defense team, after an hour of direct examination, after at least half an hour of cross examination, what did that get the Defense? What holes were so poked in what she said about the elements that I have to prove to you after all of those hours of talking about this, what did that reveal?

Lavely argues that the prosecutor thus improperly suggested to the jury that Lavely bore a burden to prove his innocence.

The State must prove a defendant's guilt beyond a reasonable doubt, and arguments that misstate this burden or shift it to the defendant constitute misconduct.[33] Because defendants do not have a burden to produce evidence, a prosecutor may not comment on the defendant's failure to do so.[34]

Here, because Lavely questioned M.M.'s credibility, the prosecutor was permitted to argue from the evidence about M.M.'s credibility. But the prosecutor's comments about Lavely's cross-examination of M.M. suggested that

---

[33] Thorgerson, 172 Wn.2d at 453.
[34] Thorgerson, 172 Wn.2d at 453.

-18-

Lavely had to "poke holes" in the State's case. But because Lavely failed to object to this comment, he must show the prosecutor's argument was so flagrant and ill intentioned that an instruction to the jury could not remedy the prejudice.

This court has held that an improper argument shifting the burden of proof to a defendant may be remedied by a proper instruction to the jury.[35] Here a timely instruction would have cured any prejudice from the prosecutor's argument. Thus, Lavely's argument fails.

Finally, Lavely argues that cumulatively the alleged prosecutorial misconduct prejudiced his right to a fair trial. Repetitive prosecutorial misconduct may cumulatively cause prejudice so that no jury instruction can erase its adverse effect. When this happens, a defendant must be granted a new trial.[36] Even when this court decides that each error standing alone would otherwise be harmless, cumulative error may warrant this court's reversal of a trial court decision.[37] But if the errors are few and do not affect the trial's outcome, a court will not find cumulative error.[38]

Here, Lavely fails to show how the alleged prosecutorial misconduct prejudiced the jury and affected the outcome of his trial. Lavely's cumulative error argument fails.

---

[35] Cleveland, 58 Wn. App. at 648.
[36] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 710, 286 P.3d 673 (2012).
[37] State v. Weber, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).
[38] Weber, 159 Wn.2d at 279.

## CONCLUSION

Because the State produced sufficient evidence to prove detention, we reject Lavely's challenge to the sufficiency of the evidence. Because Lavely indicated that he would put M.M.'s veracity at issue during his opening statement, the prosecutor did not improperly vouch for M.M. when he addressed her veracity in direct examination. Even if the prosecution improperly questioned M.M. or improperly shifted the burden of proof to Lavely, Lavely did not properly object and cannot show that a jury instruction would not have cured any resultant prejudice. Thus, Lavely's claims of prosecutorial misconduct fail. For the same reason, Lavely's claim of cumulative error fails. We affirm.

_Leach, J._

WE CONCUR:

_____

_Appelwick, J_